IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) ) | |
| NORTH AMERICAN CABLE EQUIPMENT, INC., | ) ) ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMAND** |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to the Charging Party, Kelly Groomes-Wilkins, and a class of similarly-situated individuals who were adversely affected by such practices. As articulated with greater particularity in Paragraph 7 below, the Commission alleges that Ms. Groomes-Wilkins and a class of similarly-situated employees were subjected to a racially hostile work environment when Defendant managers made racially offensive jokes and comments, and distributed e-mails containing racially offensive jokes and graphics negatively depicting African Americans.

The Commission further alleges that although Charging Party and the class members complained to management about the racially hostile work environment, Defendant failed to take any effective remedial action to stop the harassment, resulting in emotional harm to the aggrieved individuals. Unable to tolerate the racially hostile work environment, Ms. Groomes-Wilkins was constructively discharged from her employment on about February 27, 2006.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. "§ 2000e-5(f)(1) and (3)" ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000(e)-5(f) (1) and (3).

4. At all relevant times, Defendant, North American Cable Equipment, Inc. (the "Employer"), has continuously been a Pennsylvania corporation doing business in the State of Pennsylvania, and the City of West Chester, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Ms. Groomes-Wilkins filed a charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.      Beginning in November 2005, and continuing until at least February 27, 2006, Defendant Employer engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Ms. Groomes-Wilkins, and a class of similarly situated employees, to a racially hostile and offensive work environment. The racial harassment culminated in Ms. Groomes-Wilkins' constructive discharge. These unlawful practices include, but are not limited to, the following:

(a)     Ms. Groomes-Wilkins was the only African American employee in Defendant Employer's West Chester, Pennsylvania Sales Department. Within months of beginning her employment, in or about November 2005, Ms. Groomes-Wilkins heard Assistant Warehouse Manager, Lou Perez, refer to her as "Burnt Victim," a racially derogatory slur.

(b)     After Assistant Warehouse Manager Perez's racially derogatory remark, Ms. Groomes-Wilkins became extremely uncomfortable in her work environment. In or about November and December 2005, Ms. Groomes-Wilkins' co-workers shunned her and began subjecting her to disparaging treatment at the workplace.

(c)     In or about November 2005, while at a unit meeting, a co-worker (white) moved from his seat and refused to sit next to Ms. Groomes-Wilkins. Ms. Groomes-Wilkins white co-workers continued to further subject her to disparaging treatment when they yelled at her and ignored her work-related inquires. In or about December 2005, Ms. Groomes-Wilkins reported her co-worker's isolation and uncooperative behavior to her manager, Kirk Davies, but the abusive conduct by her co-workers continued.

(d)     In or about December 2005, Ms. Groomes-Wilkins learned that Defendant's Vice President, Larry Rufo, often made racially offensive jokes in front of staff in the warehouse.

Among other offensive slurs, Rufo commented, "Adam and Eve could not be Black because no black man would give up any ribs!"

(e)  In or about January and February 2006, Ms. Groomes-Wilkins began noticing discrepancies in her sales reports and learned that her white co-workers were given credit for her sales. Ms. Groomes-Wilkins complained to her manager, Davies, but he refused to address the problem.

(f)  In or about February 2006, Ms. Groomes-Wilkins received a copy of several e-mails containing racially offensive jokes and graphics negatively depicting African Americans. The e-mails were circulated in the workplace by Defendant's employees.

(g)  A racist e-mail sent by Defendant's Warehouse Manager included, among other offensive connotations, a picture of a white chick (young chicken) yelling, "What's up my Niggas?" while following a group of black chicks. Another e-mail contained a Hurricane Katrina victim (African American male) wading through ravaged waters with racially disparaging remarks captioned the "looters" beer of choice. The e-mails were circulated to Defendant's employees, including Defendant's owner, Aaron Starr, and Human Resource Manager, Nikki Owens.

(h)  Ms. Groomes-Wilkins was extremely offended by the e-mails and the frequency of circulation. Within days of receiving the e-mails, she went to her Manager Davies to report the harassment she was subjected to by her white co-workers.

(i)  During the meeting with Davies, he agreed that Defendant's workers were racist, and instead of addressing Ms. Groomes-Wilkins concerns, Davies simply responded that "things would not change" and Ms. Groomes-Wilkins "should deal with it."

(j)  The racial harassment based on Ms. Groomes-Wilkins' race created working

conditions so intolerable that a reasonable person would be forced to resign. Ms. Groomes-Wilkins was constructively discharged on February 27, 2006.

(k) Upon information and belief, a class of black employees, as well as one white employee who was associated with another black employee by marriage, were similarly subjected to a racially hostile work environment, by the racially offensive jokes, comments, and offensive e-mails that were circulated in the workplace by Defendant's managers.

8. The effect of the practices complained of in paragraph 7(a) through (k) above has been to deprive Kelly Groomes-Wilkins and a class of similarly situated individuals of equal employment opportunities and otherwise adversely affect their status as an employee because of their race and/or association with African Americans.

9. The unlawful employment practices complained of in paragraph 7(a) through (k) above were intentional.

10. The unlawful employment practices complained of in paragraph 7(a) through (k) above were done with malice or with reckless indifference to the federally protected rights of Kelly Groomes-Wilkins and a class of similarly situated individuals.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in racial harassment and any other employment practice which discriminates on the basis of race or retaliation.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities, which provide for an harassment free work

environment, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to institute and carry out anti-discrimination and racial harassment policies and complaint procedures.

D. Order Defendant Employer to institute and carry out complaint procedures which encourage employees to come forward with complaints regarding violations of its policies against discrimination, harassment and retaliation.

E. Order Defendant Employer to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-harassment; and requiring all managers and supervisors to report any incidents and/or complaints of harassment and/or retaliation of which they become aware to the department charged with handling such complaints.

F. Order Defendant Employer to make whole Kelly Groomes-Wilkins and the class members by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

G. Order Defendant Employer to make whole Kelly Groomes-Wilkins and the class members by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7 and 8 above, including their respective sub-parts, which include, but are not limited to, out-of-pocket losses, in amounts to be determined at trial.

H. Order Defendant Employer to make whole Kelly Groomes-Wilkins and the class members by providing compensation for past and future non pecuniary losses resulting from the

unlawful practices complained of in paragraphs 7 and 8 above, including their respective sub-parts, which include, but are not limited to, pain and suffering, humiliation, embarrassment, loss of life's enjoyment and pleasures, depression, anxiety and inconvenience, in amounts to be determined at trial.

    I.    Order Defendant Employer to pay Kelly Groomes-Wilkins and the class members punitive damages for its malicious and reckless conduct described in paragraphs 7 and 8 above, including their respective sub-parts, in amounts to be determined at trial.

    J.    Grant such further relief as the Court deems necessary and proper in the public interest.

    K.    Award the Commission its costs of this action.

    L.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

RONALD S. COOPER
GENERAL COUNSEL

JAMES L. LEE
DEPUTY GENERAL COUNSEL

GWENDOLYN YOUNG REAMS
Associate General Counsel
Washington, D.C.

JACQUELINE H. McNAIR
Regional Attorney

JUDITH A. O'BOYLE
Supervisory Trial Attorney

DAWN M. EDGE
Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
21 S. 5th Street, Suite 400
Philadelphia PA 19106
Telephone: (215) 440-2687
Facsimile: (215) 440-2848